## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00103-COA

CYNTHIA EASTERLING A/K/A DR. CYNTHIA               APPELLANT
MOORE, INDIVIDUALLY AND AS MEMBER
OF MELIOTUS L.L.C.

v.

RHETT R. RUSSELL, INDIVIDUALLY AND AS             APPELLEE
A MEMBER OF MELIOTUS L.L.C.

| | |
|---|---|
| DATE OF JUDGMENT: | 12/13/2013 |
| TRIAL JUDGE: | HON. KENNETH M. BURNS |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN A. FERRELL |
| ATTORNEY FOR APPELLEE: | L.F. SAMS JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | GRANTED APPELLEE/DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| DISPOSITION: | AFFIRMED: 03/17/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### LEE, C.J., FOR THE COURT:

### FACTS AND PROCEDURAL HISTORY

¶1. In 2002, Cynthia Easterling and Rhett Russell formed Meliotus LLC in order to purchase real estate. Cynthia and Rhett are siblings and were the sole members of the LLC. In 2009, the parties began discussing the possibility of dissolving the corporation and dividing the properties. On May 6, 2013, Cynthia sent a settlement offer to Rhett desiring to dissolve the corporation and distribute the properties. Rhett, treating the letter as a contract, accepted Cynthia's terms on May 24, 2013, and prepared deeds in accordance with

the agreement. Rhett did not receive a response from Cynthia, which he indicated in a second letter to Cynthia dated June 18, 2013. In this second letter, Rhett indicated he had accepted Cynthia's offer via letter dated May 24, 2013, and desired "prompt performance of our agreement." Receiving no response from Cynthia, Rhett had the deeds recorded in the chancery clerk's office in Pontotoc County. Ultimately, Cynthia filed a complaint in the Lee County Chancery Court[1] to set aside the deeds executed by Rhett and to judicially dissolve the corporation. Cynthia claimed there was no binding contract, the deeds contained errors, and Rhett's alleged acceptance of the contract did not address all material terms.

¶2.    Rhett filed a motion for summary judgment; then Cynthia filed a counter-motion for summary judgment. The chancellor granted Rhett's motion, finding that there was a binding contract between the parties. Cynthia now appeals, asserting the chancellor erred in granting Rhett's motion for summary judgment. Finding no error, we affirm.

STANDARD OF REVIEW

¶3.    In considering a trial court's grant of a motion for summary judgment, this Court conducts a de novo review and "examines all the evidentiary matters before it – admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (¶7) (Miss. 2001) (citation omitted). The Mississippi Supreme Court recently clarified the summary-judgment standard, explaining that "[t]he movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and

_____

[1] The complaint was initially filed in the Pontotoc County Chancery Court, but was transferred since the corporation's principal and only designated office was located in Lee County.

2

(2) on the basis of the facts established, he is entitled to [a] judgment as a matter of law." *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶11) (Miss. 2013) (citation omitted). The supreme court further stated that "[t]he movant bears the burden of production if, at trial, [she] would bear the burden of proof on the issue raised. In other words, the movant only bears the burden of production where [she] would bear the burden of proof at trial." *Id.* at 88-89 (¶11) (citations omitted). The supreme court further clarified that

> while [d]efendants carry the initial burden of persuading the trial judge that no issue of material fact exists and that they are entitled to summary judgment based upon the established facts, [the plaintiff] carries the burden of producing sufficient evidence of the essential elements of her claim at the summary-judgment stage, as she would carry the burden of production at trial.

*Id.* at 89 (¶13).

## DISCUSSION

¶4. In her only issue on appeal, Cynthia argues the chancellor erred in granting summary judgment in favor of Rhett. Cynthia contends the letter she sent to Rhett on May 6, 2013, was not a binding contract. Specifically, Cynthia claims Rhett failed to accept all the material terms listed in the letter.

¶5. Settlements are contracts, which are enforceable according to their terms. *McManus v. Howard*, 569 So. 2d 1213, 1215 (Miss. 1990). Settlement agreements are judged by principles of contract law. *Chantey Music Publ'g Inc. v. Malaco Inc.*, 915 So. 2d 1052, 1056 (¶11) (Miss. 2005). "[T]he law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the agreement which the parties have made, absent any fraud, mistake, or overreaching." *Id.* at 1055 (¶11). "[A] contract is not formed until the offeree accepts the terms stated by the offeror." *Vice v. Hinton*, 811 So. 2d 335, 338 (¶12) (Miss. Ct.

3

App. 2001).

¶6.     The letter from Cynthia to Rhett reads, in pertinent part, as follows:

> I have given a great deal of consideration to your request for a division of the Meliotus property and have come up with a proposal that I think is fair to both of us. . . . *I submit the enclosed settlement offer* pursuant to [Mississippi Rule of Evidence] 408 subject to the following conditions:
>
> 1.  *This offer* consists of my dividing the Meliotus LLC property into two distinct parts (see enclosed Exhibit A and Exhibit B). I have endeavored to be as equitable as I can in making this division, and *I offer you your choice* as to which parcel you desire (either Exhibit A or Exhibit B). *I will accept* the other parcel.
>
> 2.  I do not think it will be in our best interest to quibble about small amounts of property; and thus, I am not willing to engage in any negotiations concerning shifting small amounts of property from one schedule to the other.
>
> 3.  I am not willing to consider any timber sale at this time.
>
> 4.  *This offer constitutes a binding proposal on my part* which will remain in effect for the earliest of sixty (60) days from the date of this letter, or until I receive a counter-proposal from you. If not accepted within 60 days[,] or in the event of a counter-proposal, the offer should be considered withdrawn.
>
> 5.  Since the minerals are separate from the surface, we will split all mineral rights under the Meliotus LLC on a 50-50 basis.
>
> 6.  *Acceptance of this offer* will also constitute an agreement between each of us that we have no further claims against the other for services rendered or any other matter arising out of the LLC.
>
> 7.  In the event that the offer is acceptable, we will use the remaining funds in the LLC account to survey the property to establish boundaries and to prepare closing documents to accomplish our agreement. The remaining funds will be equally distributed; and if a deficit, each of us will contribute an amount necessary to conclude the matter.
>
> 8.  In the event that you consider the proposal inequitable or unsatisfactory, I invite you to do as I have done - prepare a proposed division that does not include any cutting of timber and submit it to me with the

understanding that I will have the right to select which parcel I desire.  Your proposal should be, *as is the one submitted by me, a legally binding document which will be enforceable in a court of law.*

(Emphasis added).

¶7.     Rhett's response to this offer is as follows:

In response to your May 6, 2013 offer for division and distribution of Meliotus LLC land to us as its only members, I hereby accept that portion depicted on your "Exhibit A."  I am enclosing herewith a Quitclaim Deed from Meliotus LLC to me as to this property which I would thank [sic] you to execute before a notary public and return to me.  I will not record this Deed until such time as I execute and forward to you a deed in your favor as to land owned by Meliotus LLC depicted on your "Exhibit B" to your May 6, 2013 offer.

¶8.     It is clear from Cynthia's letter that she made an offer to Rhett that she considered a "binding proposal" and a "legally binding document . . . enforceable in a court of law."  It is also clear that Rhett accepted her offer.  Cynthia contends Rhett's acceptance did not specifically address all the terms in her offer.  The only response required of Rhett was to accept Cynthia's offer and decide whether to accept Exhibit A or Exhibit B.  Upon general acceptance of Cynthia's offer, Rhett implicitly agreed to her conditions – no further negotiations regarding smaller properties (item 2), no consideration of timber sales (item 3), splitting the mineral rights equally (item 5), and relinquishment of any further claims (item 6).  Rhett was only required to address item 8 if he considered the offer "inequitable or unsatisfactory."

¶9.     We find a valid contract existed between Cynthia and Rhett.  As a result, we do not need to consider any extrinsic evidence, such as other conversations or letters between the parties.  *See Julvanna LLC v. Econ. Inns Inc.*, 24 So. 3d 391, 394 (¶9) (Miss. Ct. App. 2009).

5

We affirm the decision of the chancellor to grant summary judgment in favor of Rhett.

¶10.   **THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.  IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  BARNES AND FAIR, JJ., NOT PARTICIPATING.**